NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MARY CUDJOE,<br><br>Plaintiff,<br><br>v.<br><br>VENTURES TRUST 2013I-H-R BY MCM CAPITAL PARTNERS, LLP f/k/a MCM CAPITAL PARTNERS LLC, AS TRUSTEE, *et al.*,<br><br>Defendants.<br><br>WILLIAM BRAUKMANN, and KIMBERLY BRAUKMANN,<br><br>Third Party Plaintiffs,<br><br>v.<br><br>FAY SERVICING, *et al.*,<br><br>Third Party Defendants. | Civ. No. 18-10158<br><br>**OPINION** |

THOMPSON, U.S.D.J.

## **INTRODUCTION**

This matter comes before the Court upon the Motion to Dismiss filed by Defendant Bank of America.[1] (ECF No. 30.) Plaintiff Mary Cudjoe opposes and, in the alternative, seeks leave to amend. (ECF No. 39.) The Court has decided the Motion on the written submissions of the parties, pursuant to Local Civil Rule 78.1(b). For the reasons stated herein, the Motion is granted

---

[1] The Complaint names as a Defendant "Bank of America Home Loans Servicing, LP," (Compl. ¶ 6, ECF No. 1) by which it presumably means BAC Home Loans Servicing, L.P. (Mot. at 1 n.1, ECF No. 30-1.) The latter entity merged into Bank of America, N.A., which is the successor to the Defendant originally pled. (*Id.*)

1

in part and denied in part, and Plaintiff is granted leave to amend.

## BACKGROUND

This case concerns alleged wrongful activity that occurred after Plaintiff fell into arrears on a real property mortgage. (*See generally* Compl., ECF No. 1.) Because only Defendant Bank of America moves to dismiss, the following summary contains only allegations relevant to it. [2]

Plaintiff purchased real property in Pittstown, New Jersey with a note and mortgage from Countrywide Mortgage. (*Id.* ¶¶ 3, 5.) Defendant Bank of America serviced the mortgage. (*Id.* ¶ 23.) Plaintiff eventually fell into arrears and contacted Defendant Bank of America. (*Id.* ¶¶ 23–24.) Defendant Bank of America pointed her to a Florida company to apply for a loan modification, but she was told she would be denied based on a lack of income. (*Id.* ¶¶ 24, 25.) Defendant Bank of America knew that Plaintiff actually would have qualified for a loan but failed to disclose this fact. (*Id.* ¶ 26.)

Defendant Bank of America informed Plaintiff that "she could not re-enter her property[,] that her personal belongings would be discarded[, and that] her only available option was to do a short sale of the property." (*Id.* ¶ 27.) Defendant Bank of America knew, however, that the existence of junior liens on the property would have prevented a short sale. (*Id.* ¶ 42.) Plaintiff

---

[2] In her Opposition Brief, Plaintiff claims that "[Defendant Bank of America]'s liability in the Complaint arises not only from its own actions, but also from the misconduct and misrepresentations of [two other Defendants] that Plaintiff alleges [Defendant Bank of America] retained." (Opp'n at 6.) However, the Complaint does not allege that Defendant Bank of America retained other Defendants as its agents. While the Complaint says that Defendant Iftikhar Haq "advised that he was listing the property for sale on behalf of the bank" (Compl. ¶ 32) the Court interprets "the bank" to be either Defendant Ventures Trust 2013 I-H-R by MCM Capital Partners, LLP or Defendant Keller Williams Monmouth Ocean (*see id.* ¶ 31 (naming these two defendants, not Defendant Bank of America, as being involved with listing the property)). Because the Complaint does not allege an agency relationship between Defendant bank of America and other Defendants, the Court will not consider that possibility on a Motion to Dismiss. *See* Fed. R. Civ. P. 12(d).

agreed to a short sale (*id.* ¶¶ 33–34, 45) and Defendants Kimberly and William Braukmann ("Braukmann Defendants") were allowed to move into the property contingent on the short sale (*Id.* ¶¶ 46–47).

Defendant Bank of America then "conspired to force Plaintiff to lease the subject property to the [Braukmann Defendants]." (*Id.* ¶ 49.) Plaintiff signed a lease on September 6, 2016 that created a month-to-month tenancy and gave Braukmann Defendants the exclusive right to extend the lease term indefinitely, effectively "creat[ing] a perpetual interest in favor of [Braukmann Defendants] and thus avoid[ing] any liability." (*Id.* ¶¶ 51–52; Lease, ECF No. 1-1.) Defendant Bank of America and others told Plaintiff that signing the lease was the only way for her to retain her property. (Compl. ¶ 54.).

Eventually, Braukmann Defendants stopped paying rent. (*Id.* ¶¶ 56–58.) In 2017, Plaintiff reapplied for loss mitigation assistance, received a permanent loan modification, and has been making payments under that modification. (*Id.* ¶¶ 59–60.)

Plaintiff filed the Complaint on June 5, 2018, alleging in short that Defendant Bank of America's misrepresentations—particularly its statements that Plaintiff did not qualify for loan modification and that a short sale was the only way for her to retain her property—and its coordination with other Defendants forced Plaintiff to agree to a short sale and then a lease. (*Id.* ¶¶ 61–98.) The Complaint pleads five Counts against Defendant Bank of America: (1) violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692e (*id.* ¶¶ 61–66); (2) violation of the New Jersey Consumer Fraud Act ("NJCFA"), N.J.S.A. § 56:8-2 (*id.* ¶¶ 67–74); (3) fraud in the inducement (*id.* ¶¶ 75–83); (4) negligent misrepresentation (*id.* ¶¶ 84–93); and

(5) civil conspiracy (*id.* ¶¶ 94–98).[3]

Defendant Bank of America filed the present Motion to Dismiss on December 19, 2018. (ECF No. 30.) After the briefing schedule was delayed (*see* ECF Nos. 35, 38), on February 7, 2019 Plaintiff opposed the Motion and, in the alternative, sought leave to amend the Complaint (ECF No. 39). Defendant Bank of America replied on February 11, 2019. (ECF No. 40.) The Motion is presently before the Court.

## **LEGAL STANDARD**

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the sufficiency of a complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). The defendant bears the burden of showing that no claim has been presented. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). When considering a Rule 12(b)(6) motion, a district court should conduct a three-part analysis. *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'take note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must "review[] the complaint to strike conclusory allegations." *Id.*; *see also Iqbal*, 556 U.S. at 679. Finally, the court must assume the veracity of all well-pleaded factual allegations and "determine whether the facts are sufficient to show that plaintiff has a 'plausible claim for relief.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (quoting *Iqbal*, 556 U.S. at 679); *see also Malleus*, 641 F.3d at 563. If the complaint does not demonstrate more than a "mere possibility of misconduct," it must be dismissed. *See Gelman v. State Farm Mut. Auto. Ins. Co.*, 583 F.3d 187, 190 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679).

---

[3] The Complaint also pleads eviction against Braukmann Defendants. (*Id.* ¶¶ 99–101.)

Allegations of fraud require more detailed pleading. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). A plaintiff "must allege who made a misrepresentation to whom and the general content of the misrepresentation." *Travelers Indem. Co. v. Cephalon, Inc.*, 620 F. App'x 82, 85–86 (3d Cir. 2015) (quoting *Lum v. Bank of Am.*, 361 F.3d 217, 224 (3d Cir. 2004)). The particularity standard ensures that "defendants [are placed] on notice of the precise misconduct with which they are charged, and [are safeguarded] against spurious charges of immoral and fraudulent behavior." *Id.* (citing *Lum*, 361 F.3d at 223–24).

## DISCUSSION

### I. Plaintiff's FDCPA Claim is Barred by the Statute of Limitations

An FDCPA claim must be brought within one year of the alleged violation. 15 U.S.C. § 1692k(d); *Rotkiske v. Klemm*, 890 F.3d 422, 424 (3d Cir. 2018). The latest arguably relevant event of the Complaint occurred on September 6, 2016, when Plaintiff signed the lease with Braukmann Defendants (Lease at 6); false or misleading representations in violation of FDCPA, § 1692e, would have occurred before that date. The Complaint was filed June 5, 2018, well over a year later and therefore outside the limitations period provided by statute.

Equitable tolling is not available here. An FDCPA plaintiff may benefit from equitable tolling where she remains ignorant of the existence of a cause of action due to the defendant's conduct. *Rotkiske*, 890 F.3d 422, 428–29 (3d Cir. 2018) (citing *Bailey v. Glover*, 88 U.S. 342, 348 (1874)). The Complaint contains no allegations showing that such a circumstance existed here.

Finally, Plaintiff cannot avail herself of the continuing violation doctrine. It is not clear that this doctrine even applies to FDCPA cases. *See Schaffhauser v. Citibank (S.D.) N.A.*, 340 F.

App'x 128, 131 (3d Cir. 2009) ("Generally, our decisions have limited the continuing violation doctrine to the employment discrimination context. We decline to extend the doctrine to the circumstances of this case." (internal citation omitted)). And even if it does apply, "the last act evidencing the continuing practice [must] fall[] within the limitations period." *Cowell v. Palmer Twp.*, 263 F.3d 286, 292 (3d Cir. 2001) (quoting *Brenner v. Local 514, United Bhd. of Carpenters*, 927 F.2d 1283, 1295 (3d Cir. 1991)). In this case, the last of Defendant Bank of America's alleged acts occurred more than one year before the case was filed.

## II. Plaintiff States a Claim under NJCFA

The NJCFA provides:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, . . . is declared to be an unlawful practice . . . .

N.J.S.A. § 56:8-2. An NJCFA claim requires showing (1) unlawful conduct, (2) an ascertainable loss, and (3) a causal relationship between the conduct and the loss. *Int'l Union of Operating Engineers Local No. 68 Welfare Fund v. Merck & Co.*, 929 A.2d 1076, 1086 (N.J. 2007) (internal citation omitted). Construing the Complaint in the light most favorable to Plaintiff, Defendant Bank of America committed unlawful conduct by telling Plaintiff that she did not qualify for a loan modification and that a short sale was the only way for her to keep her property. This constitutes an "unconscionable . . . misrepresentation," N.J.S.A. § 56:8-2, that caused harm to Plaintiff in the form of eviction from her property.

Defendant Bank of America argues that it cannot be liable under NJCFA because the act protects *buyers* from practices connected to sales, but in this case Plaintiff was the *seller* in the

6

short sale of her property. However, Defendant Bank of America can be understood to have made misrepresentations while it was servicing Plaintiff's mortgage, and NJCFA prohibits unconscionable practices "in connection . . . with the subsequent performance" of a contract. *Id.*; *Gonzalez v. Wilshire Credit Corp.*, 25 A.3d 1103, 1116 (N.J. 2011) ("[C]ollecting or enforcing a loan, whether by the lender or its assignee, constitutes 'subsequent performance' of a loan, an activity falling within the coverage of the CFA." (citing *Jefferson Loan Co., Inc. v. Session*, 938 A.2d 169, 80 (N.J. Super. Ct. App. Div. 2008))). Plaintiff therefore states a claim under NJCFA.[4]

### III. Plaintiff's Fraud in the Inducement Claim is Barred by the Economic Loss Doctrine

Put simply, the economic loss doctrine provides that, when parties have entered into a contract, contract law rather than tort law governs disputes within the subject matter of the contract, and a party cannot use a tort claim to bypass the legal relationship created by the contract. *Saltiel v. GSI Consultants, Inc.*, 788 A.2d 268, 280–81 (N.J. 2002) (internal citations omitted); *see also Bracco Diagnostics, Inc. v. Bergen Brunswig Drug Co.*, 226 F. Supp. 2d 557, 562 (D.N.J. 2002). The District of New Jersey has struggled to determine how this doctrine applies to fraud in the inducement claims. *G&F Graphic Servs., Inc. v. Graphic Innovators, Inc.*, 18 F. Supp. 3d 583, 591 (D.N.J. 2014) (noting "conflicting interpretations"); *Montclair State Univ. v. Oracle USA, Inc.*, 2012 WL 3647427, at *5 (D.N.J. Aug. 23, 2012) (noting that the New Jersey Supreme Court has not provided clarity); *Touristic Enters. Co. v. Trane, Inc.*, 2009 WL 3818087, at *2 (D.N.J. Nov. 13, 2009) ("[T]he exact parameters of the economic loss doctrine are both complex and troublesome."). However, precedent reveals a fairly clear test to determine

---

[4] The economic loss doctrine does not bar NJCFA claims because NJCFA provides a contractual remedy, not a tort remedy, for purposes of the economic loss doctrine. *Dean v. Barrett Homes, Inc.*, 8 A.3d 766, 772 (N.J. 2010) (discussing *Alloway v. Gen. Marine Indus., L.P.*, 695 A.2d 264, 274 (N.J. 1997)) (dicta).

7

whether a fraud claim is barred. As some decisions frame this test, a claim of fraud intrinsic to the contract cannot go forward, while a claim of fraud extrinsic to the contract can. *G&F*, 18 F. Supp. 3d at 591–92 (citing *Lithuanian Commerce Corp. v. Sara Lee Hosiery*, 219 F. Supp. 2d 600, 607 (D.N.J. 2002)); *see also Montclair State Univ.*, 2012 WL 3647427, at *6 (asking whether the fraud is "extraneous to the subjects addressed by the parties' agreement"). As other decisions hold, fraud claims are barred unless they are "separate and distinct" from performance of the contract. *State Capital Title & Abstract Co. v. Pappas Bus. Servs., LLC*, 646 F. Supp. 2d 668, 676 (D.N.J. 2009); *accord RNC Sys., Inc. v. Modern Tech. Grp., Inc.*, 861 F. Supp. 2d 436, 451 (D.N.J. 2012) (citing *Chen v. HD Dimension Corp.*, 2010 WL 4721514, at *8 (D.N.J. Nov. 15, 2010)); *see also Grasso Foods, Inc. v. Wynn Envtl. Sales Co.*, 2018 WL 3455479, at *3 (D.N.J. 2018) (collecting cases).

In this case, Plaintiff's fraud in the inducement claims fall within the subject matter of the contract and deal with the performance of a contract. Defendant Bank of America's alleged misrepresentations arose while it was servicing Plaintiff's mortgage, and the misrepresentations all concern how Plaintiff could retain her property under the mortgage agreement. As such, the economic loss doctrine bars Plaintiff's fraud in the inducement claim.

### IV. Plaintiff's Negligent Misrepresentation Claim is Barred by the Economic Loss Doctrine

The economic loss doctrine also bars negligence claims for "false promises to perform as contracted," but it does not bar claims for "misrepresentations made to induce a party into a contract." *Cioni v. Globe Specialty Metals, Inc.*, 618 F. App'x 42, 47 (3d Cir. 2015). The allegations in this case fall into the first category. Plaintiff alleges that Defendant Bank of America made misrepresentations while servicing her mortgage. Although, arguably, Defendant

8

Bank of America's misrepresentations were designed to induce Plaintiff to enter into a contract with Braukmann Defendants, these misrepresentations still fell within the ambit of Defendant Bank of America's performance under the preexisting mortgage agreement. For this reason, the economic loss doctrine bars Plaintiff's negligent misrepresentation claim.

V. **Plaintiff Fails to State a Claim for Conspiracy**

Civil conspiracy occurs when "two or more persons act[] in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and [commit] an overt act that results in damage." *Banco Popular N. Am. v. Gandi*, 876 A.2d 253, 263 (N.J. 2005) (citing *Morgan v. Union Cty. Bd. of Chosen Freeholders*, 633 A.2d 985, 998 (N.J. Super. Ct. App. Div. 1993)). However, "an allegation of parallel conduct and a bare assertion of conspiracy will not suffice" to overcome a motion to dismiss. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). In this case, the Complaint says only that Defendant Bank of America and others "conspired to force Plaintiff to lease the subject property to [Braukmann Defendants]." (Compl. ¶ 49.) Without further factual details showing an agreement, Plaintiff's conspiracy claim fails.

VI. **Plaintiff is Granted Leave to Amend**

Rule 15(a)(2) of the Federal Rules of Civil Procedure allows amendment of the pleadings with the court's leave, which should be given freely. *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000). Plaintiff is therefore granted leave to file an amended complaint addressing the deficiencies discussed above, in accordance with Local Civil Rule 15.1(b).

## CONCLUSION

For the foregoing reasons, Defendant Bank of America's Motion to Dismiss is granted in

part and denied in part, and Plaintiff is granted leave to amend. An appropriate order will follow.

Date:   2/26/19                                              */s/ Anne E. Thompson*  
                                                              ANNE E. THOMPSON, U.S.D.J.