**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MARY CUDJOE,<br><br>　　　Plaintiff,<br><br>　　v.<br><br>VENTURES TRUST 2013 I-H-R BY<br>MCM CAPITAL PARTNERS, LLLP f/k/a<br>MCM CAPITAL PARTNERS, LLC, *et al.*,<br><br>　　　Defendants.<br><br>WILLIAM BRAUKMANN, and<br>KIMBERLY BRAUKMANN,<br><br>　　　Third-Party Plaintiffs,<br><br>　　v.<br><br>FAY SERVICING, *et al.*,<br><br>　　　Third-Party Defendants. | Civ. No. 18-10158<br><br>**OPINION** |

THOMPSON, U.S.D.J.

### INTRODUCTION

This matter comes before the Court upon the Motion to Dismiss filed by Defendant Ventures Trust 2013 I-H-R by MCM Capital Partners, LLLP, formerly known as MCM Capital Partners, LLC ("Ventures Trust").[1] (ECF No. 58.) Plaintiff Mary Cudjoe opposes and, in the alternative, seeks leave to amend. (ECF No. 60.) The Court has decided the Motion on the written submissions of the parties, pursuant to Local Civil Rule 78.1(b). For the reasons stated herein, the Motion is granted in part and denied in part, and Plaintiff is granted leave to amend.

---

[1] This party was improperly pleaded with a slightly different name. (*See* Letter, ECF No. 21.)

## BACKGROUND

This case concerns alleged wrongful activity that occurred after Plaintiff fell into arrears on a real property mortgage. (*See generally* Am. Compl., ECF No. 54.) Because only Defendant Ventures Trust presently moves to dismiss, the following summary contains only allegations relevant to it.

Plaintiff purchased real property with a note and mortgage from Countrywide Mortgage. (*Id.* ¶¶ 3, 5.) In late 2014, Countrywide Mortgage sold the note and mortgage to Defendant Ventures Trust. (*Id.* ¶ 29.) Defendants Keller Williams Monmouth/Ocean ("Keller Williams") and Iftikhar Haq had been retained as agents to service the mortgage (*id.* ¶¶ 9, 22–23), and after the transfer Defendant Ventures Trust continued to retain them (*id.* ¶ 30). Plaintiff eventually began to fall behind on her mortgage payments. (*Id.* ¶ 18.) She applied for a loan modification but was denied. (*Id.* ¶ 19.)

After Defendant Ventures Trust bought the note and mortgage, they instructed Defendants Keller Williams and Haq to "proceed with the plan to sell the subject property." (*Id.* ¶ 30.) Plaintiff was informed that her only options were to execute a deed in lieu of foreclosure or to engage in a short sale. (*Id.* ¶ 31.) In November 2014, Defendant Haq sent Plaintiff a business disclosure document and told her that she needed to sign the document in order for the sale to occur. (*Id.* ¶ 32.) Plaintiff signed it without knowing that she was not required to sign it. (*Id.*) "In January 2015 Defendant Haq informed Plaintiff that the home was being sold in a short sale." (*Id.* ¶ 34.)

A contract was drafted to sell the property in a short sale to Defendants Kimberly and William Braukmann ("Braukmann Defendants"). (*Id.* ¶ 35.) The property did not qualify for a short sale because there were junior liens on it, but Braukmann Defendants told their real estate

broker to "do whatever was necessary" to permit the sale, and the broker informed Plaintiff that the conditions for a short sale were met. (*Id.* ¶¶ 35–38.) At the instruction of Braukmann Defendants, Defendant Haq told Plaintiff that she was obligated to extend the short sale for six months, and Plaintiff agreed without knowing that she was not obligated to agree to an extension. (*Id.* ¶ 39.)

In August 2015, Plaintiff was informed that Braukmann Defendants had moved into the property contingent on the short sale. (*Id.* ¶¶ 40–41.) Defendant Ventures Trust and others then "conspired to force Plaintiff to lease the subject property to [Braukmann Defendants]." (*Id.* ¶ 44.) Defendant Haq and Braukmann Defendants told Plaintiff that she was required to sign a lease. (*Id.* ¶ 48.) Defendant Ventures Trust and others prepared the lease and told Plaintiff that signing the lease was "the only solution" that would allow her to retain the property. (*Id.* ¶ 49.) Plaintiff signed a lease on September 6, 2016 that created a month-to-month tenancy and gave Braukmann Defendants the exclusive right to extend the lease term indefinitely. (*Id.* 45–46; Lease at 1, 6, ECF No. 1-1.) Eventually, Braukmann Defendants stopped paying rent. (*Id.* ¶ 51.) In 2017, Plaintiff reapplied for loss mitigation assistance, received a permanent loan modification, and has been making payments under that modification. (*Id.* ¶ 52.)

Plaintiff filed the Complaint on June 5, 2018. (ECF No. 1.) On November 26, 2018, Defendant Ventures Trust advised the Court that it had not been served with the Complaint. (Letter, ECF No. 21.) On December 4, 2018, Magistrate Judge Lois H. Goodman instructed Plaintiffs to report on the status of service by December 14, 2018. (ECF No. 24.) On December 14, 2018, Plaintiff wrote that service was still pending. (ECF No. 27.) Defendant Ventures Trust was served on February 4, 2019. (Summons Returned Executed, ECF No. 42 (filed 02/25/2019).) Plaintiff's counsel states that her office attempted to effect service immediately after the

3

Complaint was filed in June 2018 but that Defendant Ventures Trust refused to accept service. (Ennis Cert. ¶¶ 3–4, ECF No. 51-1.) She further avers that Magistrate Judge Goodman asked Defendant Ventures Trust to accept service of process at a scheduling hearing and that Defendant Ventures Trust refused. (*Id.* ¶ 6.)[2] Counsel for Plaintiff and Defendant Ventures Trust have been in regular contact since November 26, 2018. (*Id.* ¶ 5.) Defendant Ventures Trust had been served with a Third-Party Complaint in this case by November 2018, so it was aware of proceedings in this case from that point forward. (Letter.)

On February 26, 2019, the Court granted in part and denied in part a Motion to Dismiss filed by Defendant Bank of America, and granted Plaintiff leave to amend. (Order, ECF No. 43, Op., ECF No. 44.) Plaintiff filed the operant Amended Complaint on April 12, 2019. (ECF No. 54.) The Amended Complaint alleges five Counts against Defendant Ventures Trust: (1) violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692e ( Am. Compl. ¶¶ 53–58); (2) violation of the New Jersey Consumer Fraud Act ("NJCFA"), N.J.S.A. § 56:8-2 (Am. Compl. ¶¶ 59–66); (3) fraud in the inducement (*id.* ¶¶ 67–75); (4) negligent misrepresentation (*id.* ¶¶ 76–85); and (5) civil conspiracy (*id.* ¶¶ 86–94).[3]

Defendant Ventures Trust filed the present Motion to Dismiss on April 26, 2019, arguing both insufficient service of process and failure to state a claim. (ECF No. 58.) Plaintiff opposed on May 6, 2019 (ECF No. 60), and Defendant Ventures Trust replied on May 13, 2019 (ECF No. 62). The Motion is presently before the Court.

---

[2] Plaintiff's counsel states that the scheduling hearing was on December 4, 2018 (Ennis Cert. ¶ 6), but no hearing was held on that date. It appears that Plaintiff's counsel may be referring to the scheduling hearing on January 16, 2019. (*See* Minute Entry, ECF entry dated 01/16/2019.)
[3] The Complaint also pleads eviction against Braukmann Defendants. (Am. Compl. ¶¶ 95–97.)

**DISCUSSION**

I.      **Defendant Ventures Trust's Motion to Dismiss for Insufficient Service of Process is Denied**

Defendant Ventures Trust seeks dismissal under Rule 12(b)(5) of the Federal Rules of Civil Procedure because it was not served within ninety days. Rule 4(m) requires that a defendant be served within ninety days after the complaint is filed. If service is not consummated within that time, "the court . . . must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." *Id.* The court conducts a two-step analysis: First, the court determines whether good cause has been shown; if it has, the court must extend the ninety-day deadline. *Boley v. Kaymark*, 123 F.3d 756, 758 (3d Cir. 1997) (citing *Petrucelli v. Bohringer & Ratzinger*, 46 F.3d 1298, 1305 (3d Cir. 1995)). Second, if good cause is not shown, the court considers whether to allow a discretionary extension of time. *Id.* (citing *MCI Telecomms. Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1098 (3d Cir. 1995)).

The test for good cause is similar to the test for excusable neglect. *MCI*, 71 F.3d at 1097. A plaintiff's reliance on a third party or process server does not establish good cause, nor does a plaintiff's "half-hearted" attempt to effect service. *Petrucelli*¸46 F.3d at 1307. And because the good faith inquiry focuses on plaintiff's conduct, absence of prejudice to a defendant does not constitute good cause. *MCI*, 71 F.3d at 1097.

Where good cause is absent, the court should consider whether the delay in service prejudiced defendant by impeding her ability to defend on the merits. *Boley*, 123 F.3d at 759. A defendant who had actual notice of the suit has likely not been prejudiced. *Id.*; *accord M.K. v.*

*Prestige Acad. Charter Sch.*, 751 F. App'x 204, 207 (3d Cir. 2018). "[C]ourts should strive to resolve cases on their merits whenever possible. However, justice also requires that the merits of a particular dispute be placed before the court in a timely fashion so that the defendant is not forced to defend against stale claims." *McCurdy v. Am. Bd. of Plastic Surgery*, 157 F.3d 191, 197 (3d Cir. 1998).

According to Plaintiff, Defendant Ventures Trust refused to accept service (Ennis Cert. ¶ 4), suggesting that Plaintiff made a serious attempt at timely service. On the other hand, Plaintiff did not ultimately serve Defendant Ventures Trust until eight months after filing the complaint, and two months after Magistrate Judge Goodman asked for a report on the status of service. The Court has not been provided with extensive facts from either party explaining why this delay occurred. The good faith question is therefore a difficult one.

Nonetheless, even if the Court were to determine that good faith does not exist, the Court finds that a discretionary extension of time is appropriate. Defendant Ventures Trust has been aware of this case since November 2018. (*See id.* ¶ 5 (stating that Defendant Ventures Trust's counsel has been in contact with Plaintiff's counsel); Letter (stating that Defendant Ventures Trust was served with the Third-Party Complaint).) It is therefore unlikely to be prejudiced by late service. Moreover, Defendant Ventures Trust's refusal of service makes an extension of time to serve just. For these reasons, Defendant Ventures Trust's Rule 12(b)(5) objection fails.

## II. Defendant Ventures Trust's Motion to Dismiss for Failure to State a Claim is Granted in Part and Denied in Part

Defendant Ventures Trust also seeks dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure. A Rule 12(b)(6) motion tests the sufficiency of a complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). The defendant bears the burden of showing that no

claim has been presented. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). When considering a Rule 12(b)(6) motion, a district court should conduct a three-part analysis. *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'take note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must "review[] the complaint to strike conclusory allegations." *Id.*; *see also Iqbal*, 556 U.S. at 679. Finally, the court must assume the veracity of all well-pleaded factual allegations and "determine whether the facts are sufficient to show that plaintiff has a 'plausible claim for relief.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (quoting *Iqbal*, 556 U.S. at 679); *see also Malleus*, 641 F.3d at 563. If the complaint does not demonstrate more than a "mere possibility of misconduct," it must be dismissed. *See Gelman v. State Farm Mut. Auto. Ins. Co.*, 583 F.3d 187, 190 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679).

Allegations of fraud require more detailed pleading. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). A plaintiff "must allege who made a misrepresentation to whom and the general content of the misrepresentation." *Travelers Indem. Co. v. Cephalon, Inc.*, 620 F. App'x 82, 85–86 (3d Cir. 2015) (quoting *Lum v. Bank of Am.*, 361 F.3d 217, 224 (3d Cir. 2004)). The particularity standard ensures that "defendants [are placed] on notice of the precise misconduct with which they are charged, and [are safeguarded] against spurious charges of immoral and fraudulent behavior." *Id.* (citing *Lum*, 361 F.3d at 223–24).

Many of the issues addressed below were previously discussed in the Court's Opinion deciding Defendant Bank of America's Motion to Dismiss (*See* Op. at 5–9, ECF No. 44.) For the sake of brevity, the Court provides an abbreviated analysis here and incorporates its previous reasoning.

A. *Count I: Plaintiff's FDCPA Claim is Barred by the Statute of Limitations*

As the Court explained previously:

> An FDCPA claim must be brought within one year of the alleged violation. The latest arguably relevant event of the Complaint occurred on September 6, 2016, when Plaintiff signed the lease with Braukmann Defendants; false or misleading representations in violation of FDCPA would have occurred before that date. The Complaint was filed June 5, 2018, well over a year later and therefore outside the limitations period provided by statute.

(Op. at 5 (internal citations omitted).) The same logic applies now.[4] Plaintiff's FDCPA claim against Defendant Ventures Trust must therefore be dismissed.

B. *Count II: Plaintiff States a Claim under NJCFA*

The Court held in its prior Opinion:

> Construing the Complaint in the light most favorable to Plaintiff, Defendant Bank of America committed unlawful conduct by telling Plaintiff that she did not qualify for a loan modification and that a short sale was the only way for her to keep her property. This constitutes an "unconscionable . . . misrepresentation," N.J.S.A. § 56:8-2, that caused harm to Plaintiff in the form of eviction from her property.

(*Id.* at 6.) Similarly here, the Amended Complaint alleges that Defendant Ventures Trust falsely told Plaintiff that she had to sign the lease to keep her property. (Am. Compl. ¶ 49.) Thus Plaintiff has stated a claim under NJCFA.

Defendant Ventures Trust argues that its acts are not violations of NJCFA because they are not "unconscionable." (Mot. at 10–11.) But misrepresentations similar to those alleged in this case have been held to state a NJCFA claim. *See, e.g.*, *Arcand v. Brother Int'l Corp.*, 673 F.

---

[4] Plaintiff argues in opposition to the Motion to Dismiss that, "[T]he acts and omissions of [some Defendants] extended well into 2017 . . . ." (Opp'n at 9.) But any such acts are not specified in the Amended Complaint and cannot be considered here. *State Capital Title & Abstract Co. v. Pappas Bus. Servs., LLC*, 646 F. Supp. 2d 668, 676–77 (D.N.J. 2009) ("[O]n a 12(b)(6) motion, the Court may only consider the allegations as set forth in the plaintiff's complaint, and a plaintiff is precluded from asserting new allegations in its opposition papers."); *accord Colony Ins. Co. v. Kwasnik, Kanowitz & Assocs., P.C.*, 288 F.R.D. 340, 344 (D.N.J. 2012).

8

Supp. 2d 282, 297–98 (D.N.J. 2009) (finding an NJCFA claim where toner cartridges are indicated as being empty even though large amounts of toner remain). Defendant Ventures Trust also argues that the economic loss doctrine bars Plaintiff's claim, but the Court has already explained that the economic loss doctrine does not bar NJCFA claims. (Op. at 7 n.4.) Plaintiff has sufficiently stated a claim under this Count.

C. *Count III: Plaintiff's Fraud in the Inducement Claim is Barred by the Economic Loss Doctrine*

The Court held previously that Plaintiff's fraud in the inducement claim against Defendant Bank of America is barred by the economic loss doctrine.

> In this case, Plaintiff's fraud in the inducement claims fall within the subject matter of the contract and deal with the performance of a contract. Defendant Bank of America's alleged misrepresentations arose while it was servicing Plaintiff's mortgage, and the misrepresentations all concern how Plaintiff could retain her property under the mortgage agreement. As such, the economic loss doctrine bars Plaintiff's fraud in the inducement claim.

(*Id.* at 8.) The same is true for Plaintiff's claim against Defendant Ventures Trust. It does not matter whether the acts in question are those of Defendant Ventures Trust or of its agents (under a theory of *respondeat superior*) because in either case, Defendant Ventures Trust or its agents were acting due to their responsibilities stemming from the contract with Plaintiff.

D. *Count IV: Plaintiff's Negligent Misrepresentation Claim is Barred by the Economic Loss Doctrine*

As above, the Court has already determined that Plaintiff's negligent misrepresentation claim against Defendant Bank of America is foreclosed by the economic loss doctrine. (*Id.* at 8–9.) Plaintiff's negligent misrepresentation claim against Defendant Ventures Trust is similarly barred.

E. *Count V: Plaintiff Fails to State a Claim for Conspiracy*

In its prior Opinion, the Court wrote:

9

> "[A]n allegation of parallel conduct and a bare assertion of conspiracy will not
> suffice" to overcome a motion to dismiss. In this case, the Complaint says only
> that Defendant Bank of America and others "conspired to force Plaintiff to lease
> the subject property to [Braukmann Defendants]." Without further factual details
> showing an agreement, Plaintiff's conspiracy claim fails.

(Op. at 9 (internal citations omitted).) Once again, the only fact pleaded by Plaintiff in support of its conspiracy claim is that Defendant Ventures Trust "conspired to force Plaintiff to lease the subject property to [Braukmann Defendants]." (Am. Compl. ¶ 44.) For this reason, Plaintiff has failed to state a claim for conspiracy.

### III.     Plaintiff is Granted Leave to Amend

Rule 15(a)(2) of the Federal Rules of Civil Procedure allows amendment of the pleadings with the court's leave, which should be given freely. *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000). Plaintiff is therefore granted leave to file an amended complaint, in accordance with Local Civil Rule 15.1(b).

### CONCLUSION

For the foregoing reasons, Defendant Ventures Trust's Motion to Dismiss is granted in part and denied in part, and Plaintiff is granted leave to amend. An appropriate order will follow.

Date:   5/15/19                                             */s/ Anne E. Thompson*
                                                                              ANNE E. THOMPSON, U.S.D.J.